Good morning. Please the court. We are on two issues, both of which are de novo. Let's address plain construction first, as we should. Here, the de novo review is significantly different from the de novo review that occurred in the ALOC v. ITC case because there is significantly more file history available as a result of a combined reissue, re-examination of the initial patent in the series of five. There are five patents here. The parent patent, the earliest in the series, they're all continuations of each other. The first one was the subject of a reissue re-exam proceeding, and that proceeding was ongoing at the time this court addressed three of the other four patents in ALOC v. ITC. Let's accept that there is new information. It would still be helpful to have your reasons why a change should be made. Absolutely. The district court below did not properly construe the claim, didn't even follow ALOC v. ITC, in my view. Let's start, though, with the beginning point in any claim construction analysis, and that is the claim language. Here, the term play is in some of the dependent claims, but it's not in any of the independent claims. So we start with the heavy presumption that those terms that are used that don't include play carry their ordinary meaning. There are ways to bring limitations from the specification or from the file history into the claims. There are a couple of ways to do that according to CSS fitness. If you're your own lexicographer, that's not applicable here. If there's a lack of clarity in some of the terms, I don't think so, not here. 112.6, there are some means limitations here, but in those independent claims that we're asserting, I don't believe there are any. But there are some terms that were the subject of some analysis in the earlier ALOC case that implicate play. Yes, displacement. Locking element, locking member, displacing. I believe that the court in ALOC, albeit based on an incomplete file history, or less than all that we have now, linked play clearly to two limitations it defined as critical, displacement and disassembly. Now, I believe that the reasons why they found those limitations critical and read play in have been obviated by the subsequent file history, and I'll explain why. But before I do, let me point out that the 579 patent, which hadn't issued except a few months before the September 03 date of the ALOC decision, that's when the 579 patent issued, and that patent does not contain displacement or disassembly. So to the extent that you are persuaded, based on the ALOC decision, albeit without the subsequent material, I still believe that the 579 patent is free of a play limitation. But let's go back to the reasons why you might, or a court might think about reading play into the claims of this case. There are two general sources. One is the specification itself, and the other is the file history. In the specification, the term play is used a total of three times. Twice in connection with descriptions of clearly described and identified preferred environments. One is a situation where the panels could be disassembled without any contact between the locking members. And there it said, if play is there and play is big enough, you can do that without those components even touching. And it says that that's a possible embodiment. The second one was a description of the assembly method where snapping occurs on the short side of the panels, and it says that play on the long side, in that case, will facilitate sliding so that you can't snap the short sides. But do you agree that if there is no play, however it's described in the accused device, then there can be no infringement unless the claims are construed to include devices with no play? No. The errors that the judge made in reviewing the evidence is a separate issue. That's the granting of the summary judgment that I don't think he gave proper credit to our evidence. And so even if play is in some of these claims, I think we have an infringement, and I think that it's a situation where the experts disagreed, and it's the kind of thing that should go to the jury. This judge I don't think understood. He either didn't understand or didn't give proper credit, which he's supposed to do. Under Seventh Circuit law, he's supposed to believe our evidence, and he's supposed to give it essentially the benefit of the doubt. I don't think he did either. He quoted verbatim large sections of Pergo's brief and basically dismissed our case, I think perhaps wanting to get clarity on claim construction, but I don't know that. You say it should go to the jury on the premise that the jury could find that there is play in the accused structure. If you condone the claim construction that occurred and find that there was no error, I still think the case should be remanded for a jury trial because the judge did not give proper credit to our evidence. So I believe that the court erred in reading play yet. Repeatedly, he read it into locking member, locking element, locking device, locking strip, second mechanical connection. I mean, this judge read it all over the place. And frankly, his ruling and the ruling by the judge in New York in a similar case and the ruling by the ITC, to me, are perfect examples of why you shouldn't read limitations into claims. This was noted by the Supreme Court years ago, that if you start doing that, there's no control, but the claims are what define the invention. And here, we don't fit within any of the reasons why you find an exception to that rule. The file history, the specification I don't think is the kind of specification that this court found as justification in the Simon case, where there was an unequivocal statement that all of the embodiments are limited to the coaxial catheter, I believe it was coaxial. We don't have that kind of specification here. We have limited references to play in the preferred embodiment. Now, there is a third reference, and it's in a long recitation of features. It's the first actually, chronologically, it's the first reference to play in the specification. And as is common in patent applications originating in Europe, they recite the original claim as filed in the specification. And that's what happened here. The original claim as filed in this case, the very first one, in fact, did have an express play limitation. So there's a long recitation of features that include play as being possible things for this invention. It's not a clear and unequivocal, unmistakable narrowing of any term or feature. It seems, though, with making that argument, you're really taking issue with the original ALEC decision of this court. Well, I do take issue with it, and I think, I mean, obviously I disagree. And Judge Schall did in his dissent in a very lengthy and well-written, I believe, dissent. But I think more importantly is the subsequent file history. Now, you can say that's self-serving. And of course it is. All prosecution is self-serving. It's ex parte. Although in this case, the requester of the re-exam was Pergil. And they submitted arguments on the import, impact of the ALEC case during the re-exam. The examiner obviously read it. We made a submission after the case was decided. And in her notice of allowability, she flagged those two arguments and an office action response that the applicant had made, explaining why the original file history, which caused the court in Olock to understand that play was an implied limitation in the newly submitted claims, which I think is, if you step back as a prosecutor of patents, who would submit a claim that is ostensibly broader because a limitation has been removed and would say, well, I've taken on a limitation, but I acknowledge it's there. Why would you do that and then have a claim that's exactly the same scope as was originally submitted? Frankly, that's the way the court in Olock understood the file history, and that's what was addressed in the subsequent re-issue, re-exam file history. It was explained that those claims that were submitted after the original claims had been allowed, and the notice of allowance did not mention play as a reason for allowance, caused the applicant to submit some new claims with the play limitation removed. And if the applicant's intent is what you look to in a file history to see what they intended, there's no doubt that what was intended here were claims without the play limitation. Now, I'm sure Mr. Darn… What are we to make of the fact that in the earlier Olock decision from our court, there was a pretty comprehensive, thorough analysis of the specification and the prosecution history, and the conclusion was that the play limitation was really an essential part or part of the invention. It wasn't just an embodiment. It was the invention. That was discerned both from the specification and from the prosecution history, which was considered consistent with that view. And then, admittedly, after the adverse decision, you're making efforts in the patent office to say, well, wait a second, that's not part of our invention. That really wasn't part of the invention. We don't want that limitation read into these claims, so take that into consideration. Let us know if you think that's not right, but this claim doesn't have the word play. No, I understand, and it's not a scenario I've seen. We look for cases where, you know, this kind of thing has happened, where a decision has been made on a patent, and while that patent is being decided, or while a case is being decided by this court, there's file history being created at that same time. I mean, I think this is, to me, this seems different from a case where maybe you come in with a claim that has five elements, and then during the course of litigation you realize, oops, I added one element too many, so you go back to the patent office, request a broadening reissue, and you say, I'm submitting a new claim with only four of the five elements. You're not going to be foreclosed from doing that. Nobody is going to say, well, wait a second, you've already conceded your invention is five elements. This happens all the time, but somehow this strikes me as being different from just adding, you know, broadening a claim by deleting a limitation, because you have a characterization of the invention in the specification and in the earlier prosecution history that is counter to what you're trying to do. I agree this is an unusual scenario, but I also believe that a de novo review of especially the 579 patent, where displacement and disassembly, which were the critical limitations, I mean, to the extent that this court said in Alloc no possible claim could ever be written on this specification that didn't include play, I think that's dicta. I don't think that's what they intended to say, I mean, that's what Pergo is arguing was said, but I don't think that's what they intended to say in Alloc, that no claim could ever be written. I think they limited play, they read play in based on the link between displacement and play. A link that I think is critical, and you can read those three patents as having play limitation based on displacement and disassembly. I disagree because of the subsequent file history, but what Pergo is doing here is they're linking displacement and play for purposes of claim construction, but when it comes to infringement, they want to say, oh, wait a minute, displacement and play, they're not linked, one doesn't require the other, but they've said in their own patents that there is this inextricable link, and you can't have displacement without play. They did that in trying to get a patent directed to a system that would assemble without any displacement at all. So that admission is one of the things that I don't think the court below gave proper credit to, and he discounted our evidence on the link between displacement and the indirect proof of play, if you will, by showing how easy their panels can be displaced. Okay, we're out of time. Let's hear from the other side. We'll save you a couple of minutes for rebuttal. Thank you. Good morning, and may it please the court. Three different courts have held that all the claims in this case require play. The District Court in New York, the Lifton case, the District Court here, and the ALEC opinion of this court. Those cases have significance, wholly aside from the arguments that Mr. Roche is making, because the court's case law says that even though the original ALEC case did not have preclusive effect because it was an ITC case, it should govern further cases unless, and the words of the court are, there are thoroughly justified grounds to the contrary. I submit there are no thoroughly justified grounds. Both District Courts examined the case in detail. They did not just blindly follow ALEC. They examined it. But there's been a broadening reissue. That's an event that doesn't occur so often in terms of whether there will be grounds for substantive review of the claim construction. Your Honor, certainly when you have a broad reissue, you can make arguments, but it still must be consistent with the original decision. And I disagree with Mr. Roche because I don't think you can reasonably read the ALEC decision and conclude that the majority panel held that claims without play could be submitted on the basis of this spec. They said the invention was play. It was essential to the invention. They said that every embodiment included play. I think that decision said play isn't supported by this specification. Is there no way that ALEC could have gone back to the Patent Office to seek protection in a claim without the limitation of play? Not under the original ALEC decision. I submit they could not have. But it goes further than that. Are you relying on the original ALEC decision in your response to Judge Lynn's question? I am relying on the original ALEC decision because I think they have not shown a thoroughly justified ground to ignore it. But there's another point. The Lifton case is collateral estoppel in this case. That case was dismissed with prejudice. There are three patents involved in that case, including the two that were not covered in the original ALEC decision. While ALEC cites a case from the Seventh Circuit that says it is not collateral estoppel, the case deals with you have to have a judgment. There's a 1931 Seventh Circuit case, Phillips v. Shannon, 445, Fed 2nd, 460th, 1971, which basically says a dismissal with prejudice can have preclusive effect. So I submit, one, Lifton precludes them from challenging this decision as to three of the patents, and as to the other two patents, I suggest that they have not shown thoroughly justified grounds to ignore ALEC. Now, one of the big points— Mr. Senator, I haven't heard you say that on the merits, on the facts and on the law, the claim should be construed to require play. The only arguments I've heard is that we shouldn't look at it. Is that a correct statement of your position? The answer to your question, Your Honor, is that on the facts and the law, the claim should be restricted to play. The ALEC opinion and the other two opinions spell it out in detail. Is that what you're saying, that because it was previously looked at, we can't look at it again? You can look at it again. You can. It is not preclusive. You're just saying we can look at it again, but the ALEC decision and the analysis in that decision is the correct analysis, and it applies here just as it did there. That's exactly right, Your Honor. So reexamination, prosecution history doesn't change that? You anticipated my next comment. It not only doesn't change it, it works against ALEC, and let me explain why. In the original prosecution, they added claims at the very end, claims 21 to 23, which they say doesn't include the word play. The majority opinion in ALEC quoted that statement and found that that statement did not accomplish what they wanted to accomplish, that it wasn't a disavowal of their previous statement to distinguish over the Trotter patent, that there had to be play, and therefore they had disavowed the invention. Then they prosecuted the reexamination and reissued together. And what happened there? The first thing that happened was the examiner rejected, with the claims 21 to 23 in the case, the examiner rejected claims 21 to 23 on double patenting on the 579 patent. And what did she say? She said each of the claims calls for play. Making it clear, she did not feel claims 21 to 23 eliminated play. What happened then? They filed a terminal disclaimer, and they also added a long statement, which they quote at length in their briefs, saying, hey, examiner, tell me if I'm wrong. Claims 21 and 23 don't include play. What did the examiner do? The examiner then rejected on Trotter again, citing play. The only reason she would have mentioned play was because she thought the claims still included play. So they filed a terminal disclaimer. Then the examiner came back with another double patent rejection over the 410 patent. And she again looked at claims 21 to 23, and she said those claims include play, and therefore there's double patenting here. And so what was made clear through all of these events is the examiner did not agree that claims 21 to 23 or any other claims in that case, reissue or reexamination, was devoid of play. I think that that isn't really quite a fair statement. She said that they include play as well as non-play, that they were broad enough to include play, and therefore were double patenting with the claims that were specific to play. Your Honor, I do not remember her saying that they included play and not play. I think you just told us she said they include play. Pardon? Didn't you just say the examiner held there was double patenting because the claims included play? Well... Did I mishear? Yes, but she didn't say they also included not play. Exactly. And so you're telling us to, what, to read that in to a statement because it was silent? Yes, because they had distinguished Trotter earlier on the ground that they had play and Trotter didn't have play. And so that was the reason for the examiner continually citing the play thing in her two double patenting rejections and in her prior art rejection based on Trotter. Now, they have also argued that, well, the 579 patent doesn't contain displacement or disassembly. And they say that ALEC, the original ALEC decision, was key to displacement and disassembly. But it is not. What the original ALEC decision focused on were the words locking member, locking element, locking means, locking roof. And they said that those limitations facilitated displacement and disassembly. They enabled displacement and disassembly. They permitted, those are the exact words in the original ALEC decision. You say that we should ignore the argument during the reissue reexamination. I'm saying, no, you should not ignore it. I'm saying it doesn't help them. I'm saying that it actually hurts them. Because though they asked the examiner to tell them if the claims included play, I think the examiner did tell them that. I think the examiner basically said to them, through her two double patenting rejections and her Trotter rejection, that the claims included play.  She allowed the claims. After a routine objection where the first, as you know, the first thing an examiner does is say no. And then you work from there. She allowed the claims because they had limitations in them, which she felt justified their allowance. That doesn't mean that... She allowed a claim that was not limited to play on its text. Whether it's limited in its construction is a different question that I haven't heard you discuss. Your Honor, I submit... I may be disagreeing with you. I submit that she thought the claims included play. She was told that the Federal Circuit had already decided. She was told that by Alec. She was told by Alec that every one of the claims included play. And I think she allowed the claims because she thought they all included play. I think that's what her rejections, double patenting rejections, meant. I think that's what her Trotter rejection meant. She thought they all included play. And she did not, at any point in the prosecution history, I have reviewed, and I have reviewed it, I think, fairly thoroughly. She never suggested that those claims were devoid of play. I don't think she would have made a decision... She only allowed it after the terminal disclaimer was filed. She did. There were two terminal disclaimers filed, and she allowed it only after both terminal disclaimers were filed. All I'm saying is, I don't think the examiner's actions support Alec's arguments. And I think the original, I think the Alec decision had it right. I think that the lower court decision in this case, which analyzed it independently of the Alec decision, had it right. I think the district court in New York had it right, which also analyzed it independently of this decision. So, I think the bottom line is that, one, Lifton, I think, collaterally estops them as to three patents. I don't think they have demonstrated thoroughly justified grounds to not follow the original Alec decision. And I think there are other arguments, which they include in their brief. One of their arguments is claim differentiation, which we've dealt with at length. One of their arguments about small play versus a claim that doesn't mention play, which the district court rejected in this case. Their argument about claim 1 versus claim 22, one saying play and the other one not, I think has been dealt with extensively in both decisions, that the doctrine of claim differentiation does not overrule a clear teaching of the patent to the contrary, and that there is a clear teaching to the contrary, was spelled out in great detail in the original majority Alec opinion, which I think was completely right. I don't know if there are any other questions. I know I still have time left. But you don't have to use it. I will forego my remaining few minutes. Thank you, Mr. Brown. Mr. Rush, you have, say, three minutes for rebuttal. Thank you, Your Honor. Regarding Lifton, I don't think it's Seventh Circuit law that a settlement, which is encouraged by all jurisprudence, would be binding, especially with a non-final claim construction ruling. Another thing to note about that case, with the same expert and very similar evidence, that judge denied summary judgment of infringement. He denied the motion that this court below granted, I think erroneously. The double patenting issue, what happened here is that the examiner lumped, as they often do, claims together. And some of the claims that she was rejecting on double patenting, independent claims, contained a play limitation. And she selected other claims that also had play limitation in a dependent claim and said, given this, there's an obviousness rejection. Obviousness, not anticipation. So her rejection was an obviousness one, and it was dealt with with a terminal disclaimer, as they often are. I don't think that's anything that is a clear disavowal or a clear statement about claim scope. If you want to see what this examiner thought about the scope of the Pervon patents, it's an interesting form of evidence. I don't think it's quite intrinsic. But within six months after the parties submitted their positions on Alloc, she was using the Pervon specification to reject some claims by Yunlin, a co-defendant originally with Pervo in this case. They were seeking claims on a patent system on their product, the Presto product. And she applied the 410 patent and said, I'm rejecting you on the basis of Pervon. They came back and said, oh, but Pervon's got play. Look at the Alloc versus ITC decisions. She said, no, it doesn't. That disclosure and that patent application are broad enough to have disclosures that don't include play. And she gave specific examples of why she felt that way. And that's at Appendix 5559 and 5561. Twice she bolstered her position that the Pervon specification is not limited to play. I don't know that that's intrinsic evidence, but it's darn close. It's the same examiner talking about the same specification in the context of what eventually became the accused product. So I think that's important. The other thing is the Saunders case, I think, clearly got, if there was a disavowal based on the original specification, and the same thing with respect to the Trotter reference. It's a system, it's a disavowal of systems that couldn't be disassembled non-destructively. That's the point. The other thing Saunders did was clearly link the play limitation to disassembly and displacement. The 579 patent did have reasons for allowance. There were reasons for allowance in the 579 patent, and it relates to a specific feature relating to a gap on the back side of the panel between the locking element and the far side of the groove, something that's not shown in any of the prior art, has nothing to do with play, and it was a reason for allowance of that patent, which was not the subject of the Alloc decision at all. And that patent doesn't claim, doesn't have the disassembly and displacement limitations. So I think that's clear on the 579 patent. Okay. Thank you, Mr. Roche and Mr. Denner. The case is taken under submission.